UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT ZAMORA, | ) Case No.: 1:14-cv-00197 - JLT |
| Plaintiff, | ) ORDER DIRECTING ENTRY OF JUDGMENT IN |
| v. | ) FAVOR OF DEFENDANT, CAROLYN W. COLVIN, |
| | ) ACTING COMMISSIONER OF SOCIAL SECURITY, |
| CAROLYN W. COLVIN, | ) AND AGAINST PLAINTIFF ROBERT ZAMORA |
| Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

Plaintiff Robert Zamora asserts he is entitled to disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff argues the administrative law judge erred in evaluating the evidence, and asserts the matter should be remanded for the payment of benefits. (Doc. 20) Defendant argues the ALJ's decision is supported by substantial evidence in the record. (Doc. 24)

Because the ALJ did not commit a harmful error in performing the sequential evaluation set forth by the Regulations and discussed all probative medical evidence, the decision is **AFFIRMED**.

## **BACKGROUND**

Plaintiff's application for benefits was denied at the initial level and upon reconsideration by the Social Security Administration. (Doc. 11-3 at 17; Doc. 8-5 at 2-10) Plaintiff requested a hearing, and testified before an ALJ on October 10, 2012. (Doc. 8-3 at 14, 35) The ALJ concluded Plaintiff was not

disabled under the Social Security Act, and issued an order denying benefits on November 19, 2012. (*Id.* at 14-26)  The Appeals Council denied Plaintiff's request for review on December 11, 2013.  (*Id.* at 2-5)  Thus, the ALJ's determination became the final decision of the Commissioner of Social Security ("Commissioner").

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act.  When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error.  42 U.S.C. § 405(g).  The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  If a claimant establishes a prima facie case of disability,

2

the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920(a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

### A.     Relevant Medical Evidence

On July 17, 2009, Plaintiff had an x-ray taken of his thoracolumbar spine. (Doc. 11-8 at 62) Dr. Mario Deguchi determined Plaintiff had "[m]ild S-shaped scoliosis," and "[n]arrowing of the intervertebral disc spaces and osteophytes . . . consistent with degenerative disc disease." (*Id.*)

On January 21, 2011, Plaintiff had x-rays taken on his cervical spine, chest, left knee, and right knee. (Doc. 11-8 at 56-60) Dr. Deguchi reviewed each of the x-rays, and found Plaintiff had "[m]ild degenerative changes of the spine," [m]ild left C5/C6 foraminal stenosis," and "[s]traightening of the cervical curvature bordering on alordosis." (*Id.* at 56, 59) In addition, Dr. Deguchi opined Plaintiff had minimal osteoarthritis in his left knee, and mild osteoarthritis in his right knee. (*Id.* at 57-58)

Dr. Scott reviewed the images and agreed with the determination that Plaintiff was able to perform work at the light exertional level on April 18, 2011. (Doc. 11-4 at 6) However, the next day the Social Security Agency determined "there were not enough records available pertaining to [Plaintiff's] physical condition for adjudicative period . . . to make an assessment." (*Id.*) Accordingly, it was suggested that Plaintiff have an examination related to his physical condition. (*Id.* at 6-7)

Dr. Fabria Vesali performed a comprehensive orthopedic evaluation on May 27, 2011. (Doc. 11-8 at 78) Dr. Vesali reviewed Plaintiff's x-rays from 2009 and 2011, and questioned Plaintiff about his history of back pain. (*Id.*) Plaintiff reported he "slipped and fell and injured [his] back." (*Id.*)

3

Plaintiff told Dr. Vesali that his pain was exacerbated by lying down, standing, sitting for a long period and "walking more than three blocks." (*Id.*) Dr. Vesali found Plaintiff did not have "tenderness on the cervical, thoracic, or lumbosacral spine." (*Id.* at 80) Plaintiff exhibited tenderness on his knees and "on the bilateral gluteus medius." (*Id.*) Also, Dr. Vesali found Plaintiff had a "normal range of motion of the cervical spine with no pain on motion." (*Id.* at 81) Further, Plaintiff's motor strength was "5/5 in bilateral upper and lower extremities including grip strength." (*Id.* at 80) Dr. Vesali concluded Plaintiff "should be able to lift/carry 50 pounds occasionally and 25 pounds frequently," and explained the limitation was "due to [the] MRI report of cervical spondylosis." (*Id.* at 81) In addition, Dr. Vesali limited Plaintiff to "frequent climbing, stooping, kneeling, crouching and crawling . . . due to mild knee arthritis." (*Id.*)

Dr. Sheehy reviewed the record and offered a physical residual functional capacity assessment on June 9, 2011. (Doc. 11-4 at 18-21) Dr. Sheehy determined Plaintiff was able to lift and carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk about six hours in an eight-hour day, and sit for about six hours in a eight hour day. (*Id.* at 19) Due to Plaintiff's "[c]hronic back and knee plain," Dr. Sheehy opined Plaintiff had postural limitations and was limited to occasionally climbing ramps, stairs, ladders, ropes, and scaffolds; and frequently bending, stooping, kneeling, and crouching. (*Id.*) In addition, Dr. Sheehy found Plaintiff was limited to frequent overhead reaching given the degenerative disc disease in his cervical spine with pain. (*Id.* at 20) Further, Dr. Sheehy determined Plaintiff should "[a]void concentrated exposure" to extreme cold, vibration, and hazards, explaining "[c]old can aggravate arthritic pain, vibration can aggravate back pain, limited mobility from back/ neck/ knee pain." (*Id.* at 20-21)

On July 29, 2011, Plaintiff had an x-ray on his lumbar spine. (Doc. 11-8 at 93) Dr. Deguchi determined Plaintiff had "[d]egenerative disc disease and degenerative joint disease," "[h]ypolordosis and mild levoconvex scoliosis" in his lumbar spine. (*Id.*)

In November 2011, Plaintiff had an MRI on his lumbar spine. (Doc. 11-10 at 44) Dr. Kerr reviewed the images, and found Plaintiff had "[m]ultillevel degenerative disc and facet disease resulting in multilevel mild spinal canal stenosis, most prominently at L4-L5 where concomitant neuroforaminal canal narrowing is also seen." (*Id.* at 45)

4

Dr. E. Wong reviewed the record and completed a residual functional capacity assessment on October 3, 2011. (Doc. 11-4 at 60-63) Similar to Dr. Sheehy, Dr. Wong determined Plaintiff was able to lift and carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk about six hours in an eight-hour day, and sit for about six hours in a eight hour day. (*Id.* at 60-61) Dr. Wong opined Plaintiff was limited to occasionally climbing ramps, stairs, ladders, ropes, and scaffolds; and frequently bending, stooping, kneeling, crouching, and crawling. (*Id.* at 61) In addition, Dr. Wong found Plaintiff was limited to frequent overhead reaching. (*Id.* at 62) Dr. Wong also opined that Plaintiff should "[a]void concentrated exposure" to extreme cold, vibration, and hazards. (*Id.*)

Plaintiff had a second MRI on his lumbar spine on January 12, 2013—after the ALJ issued an order denying benefits. (Doc. 11-10 at 38) Dr. Beltran found plaintiff had "mild degenerative disc disease with annular bulge" at the L1-2 and L2-3 levels; "degenerative disc disease with annular bulge and right foraminal disc herniation of the protrusion type with right foraminal impinging stenosis of the L3 nerve root" at the L3-4 level, and "mild bilateral facet arthrosis" at the L5-SI level. (*Id.* at 39)

**B.    Administrative Hearing Testimony**[1]

Plaintiff testified at the administrative hearing on October 10, 2012. (Doc. 11-3 at 34) Plaintiff said he went to the doctor "once or twice a month" for pain medication and treatment of his diabetes. (*Id.* at 41) Plaintiff said that on a scale of one to ten with then being "the worse possible pain you could imagine," his pain was a "[n]ine or a ten" without medicine, and a "three or a four" with the medicine." (*Id.* at 43-44)

Plaintiff reported he tried "to make [him]self busy at least three to four hours a day," by doing yard work and household chores such as washing dishes, sweeping, and vacuuming. (Doc. 11-3 at 44-45) He estimated that he was able to sit about "two, two-and-a-half" hours and stand for "anywhere from two-and-a-half, three hours" in an eight-hour day. (*Id.* at 45-46) In addition, Plaintiff believed he could lift "about 10, 15" pounds frequently, and "about 35, 40 pounds" total. (*Id.* at 47)

---

[1] The ALJ rejected the credibility of Plaintiff's subjective complaints, and Plaintiff does not challenge the adverse credibility determination. The Court will "review only issues with are argued specifically and distinctly." *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003). When a claim of error is not argued and explained, the issue has been waived. *See, id.* at 929-30. Because Plaintiff has waived the issue of his credibility, Plaintiff's testimony is summarized only to provide a context of his claimed physical impairments.

He said he last worked as a childcare provider for his four grandchildren who were between four and fifteen years old. (Doc. 11-3 at 49-51) Plaintiff testified that he stopped watching the children when "[t]he state stopped the … funds." (*Id.* at 49) Plaintiff stated that he was unsure whether he could work because his back was "really out of whack" and he had to turn his shoulders to look to the side. (*Id.*)

Vocational expert Cheryl Chandler ("VE") testified after Plaintiff at the hearing. She classified Plaintiff's most recent past work as a child monitor, *DOT*[2] 301.677-010. (Doc. 11-3 at 60) The VE explained the work was classified as semi-skilled, and performed at the medium exertional level. (*Id.*)

The ALJ asked the VE to consider a "person of the claimant's age, education, and work experience." (Doc. 11-3 at 60) The hypothetical individual could "stand and walk six hours of an eight-hour day with normal breaks, … lift and carry 50 pounds occasionally, 25 pounds frequently, [and] do frequent climbing kneeling, stooping, crouching, and crawling." (*Id.*) Also, the ALJ said the person had "no manipulative limitations [and] no other work place environmental limitations." (*Id.*) The VE opined such a person could perform Plaintiff's past relevant work as a child monitor. (*Id.*)

**C.    The ALJ's Findings**

Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial activity after the application date of January 31, 2011. (Doc. 11-3 at 19) Second, the ALJ found Plaintiff "has the following severe impairments: degenerative disc disease and degenerative joint disease of the lumbar spine causing low back pain with radiculopathy; mild bilateral knee arthrosis; hepatitis c; and diabetes mellitus." (*Id.*) These impairments did not meet or medically equal a listed impairment. (*Id.* at 22) Next, the ALJ determined:

> [Plaintiff] has the residual functional capacity to perform a wide range of medium work as defined in 20 CFR 416.967(c). Specifically, he can stand and walk for six hours in an eight-hour day with normal breaks. He can sit without limitations. He does not need an assistive device for ambulation. He can lift 50 pounds occasionally and 25 pounds frequently. He can do frequent[] climbing, stooping, kneeling, crouching, and crawling. He has no manipulative or environmental limitations.

---

[2] The *Dictionary of Occupational Titles* ("*DOT*") by the United States Dept. of Labor, Employment & Training Admin., may be relied upon "in evaluating whether the claimant is able to perform work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990). The *DOT* classifies jobs by their exertional and skill requirements, and may be a primary source of information for the ALJ or Commissioner. 20 C.F.R. § 404.1566(d)(1).

(*Id.* at 23)  With this residual functional capacity, the ALJ found Plaintiff was "capable of performing past relevant work as a child monitor," because the "work does not require the performance of work-related activities precluded by the claimant's residual functional capacity."  (*Id.* at 24)  Consequently, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act.  (*Id.* at 25-26)

## DISCUSSION AND ANALYSIS

Appealing the decision to deny his application for benefits, Plaintiff argues that the ALJ erred at step two of the sequential evaluation because the ALJ did not find Plaintiff had a severe impairment of cervical degenerative disc disease, and by rejecting opinions of Drs. Sheehy and Wong.  (Doc. 20 at 8-12)  Further, Plaintiff asserts the ALJ erred by not addressing the opinion of Dr. Scott.  (*Id.* at 12-13)

**A.     The ALJ's Step Two Determination**

Plaintiff notes that he diagnosed with cervical degenerative disc disease, which the ALJ found was not severe at step two of the sequential evaluation.  (Doc. 20 at 8-9)  The inquiry at step two is a *de minimus* screening "to dispose of groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yucket*, 482 U.S. 137, 153-54 (1987)).  The purpose is to identify claimants whose medical impairment makes it unlikely they would be disabled even if age, education, and experience are considered.  *Bowen*, 482 U.S. at 153 (1987).  A claimant must make a "threshold showing" (1) he has a medically determinable impairment or combination of impairments and (2) the impairment or combination of impairments is severe.  *Id.* at 146-47; *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c).  Thus, the burden of proof is on the claimant to establish a medically determinable severe impairment that significantly limits his physical or mental ability to do basic work activities, or the "abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(a), 416.921(a).

An impairment, or combination thereof, is "not severe" if the evidence establishes that it has "no more than a minimal effect on an individual's ability to do work."  *Smolen*, 80 F.3d at 1290.  The Ninth Circuit determined "[t]he mere existence of an impairment is insufficient proof of a disability."  *Matthews v. Shalala*, 10 F.3d 678 (9th Cir. 1993).  Accordingly, this Court explained: "A mere recitation of a medical diagnosis does not demonstrate how that condition impacts plaintiff's ability to engage in basic work activities.  Put another way, a medical diagnosis does not an impairment make."  *Nottoli v. Astrue*, 2011 U.S. Dist. LEXIS 15850, at *8 (E.D. Cal. Feb. 16, 2011); *Huynh v. Astrue*, 2009

U.S. Dist. LEXIS 91015, at *6 (E.D. Cal. Sept. 30, 2009). Rather, for an impairment to be "severe," it must significantly limit the claimant's physical or mental ability to do basic work activities, or the "abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1520(c), 416.920(c), 416.921(b).

Here, the ALJ acknowledged that an x-ray of Plaintiff's "cervical spine . . . showed degenerative changes, hypolordosis, and mild foraminal stenosis." (Doc. 11-3 at 20)  The ALJ found the impairment was not severe, explaining: "Although the claimant testified that his neck pain makes it difficult for him to turn his head, there are few objective findings to support his statement.  Aside from a brief period in 2011, examinations of the claimant's neck have revealed no abnormalities, and he has not complained of neck pain to his treating doctors." (*Id.*)  However, Plaintiff asserts the ALJ erred in not finding his cervical degenerative disc disease was not severe because Drs. Sheehy and Wong "reviewed the record and found Mr. Zamora was limited to frequent overhead reaching with the bilateral upper extremities." (Doc. 20 at 9)

Significantly, the ALJ's determination that the impairment was not severe is supported by the opinion of Dr. Vesali, who reviewed Plaintiff's x-rays and found he had "spondylosis and mild foraminal narrowing" in his cervical spine. (Doc. 11-8 at 81)  Dr. Vesali examined Plaintiff and found he had a "normal range of motion of the cervical spine with no pain on motion." (*Id.* at 81)  In addition, Dr. Vesali found Plaintiff did not have "tenderness on the cervical, thoracic, or lumbosacral spine." (*Id.* at 80)  Dr. Vesali concluded Plaintiff did not have manipulative limitations. (*Id.* at 81) Because the opinion was based upon independent clinical findings, Dr. Vesali's opinion is substantial evidence in support of the ALJ's determination. *See Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (when an examining physician provides independent clinical findings, such findings are substantial evidence in support of an ALJ's ultimate decision); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (explaining an examining physician's opinion is substantial evidence if "it rests on his own independent examination").

Even if the Court were to find the ALJ erred in finding Plaintiff's cervical degenerative disc disease was "not severe" at step two, any error in designating specific impairments as severe at step two is harmless. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (holding that any error in omitting an impairment from the severe impairments identified at step two was harmless where the step

was resolved in the claimant's favor). Here, because the ALJ determined Plaintiff had medically determinable severe impairments, step two was resolved in Plaintiff's favor.

Moreover, as Plaintiff acknowledges, Drs. Sheehy and Wong opined Plaintiff was able to *frequently* reach overhead. The ALJ determined Plaintiff was able to perform past relevant work as a child monitor. (Doc. 11-3 at 26) Under the *Dictionary of Occupational Titles,* the child monitor position requires reaching only on an *occasional* basis. *DOT* 301.677-010, 1991 WL 672562. Reaching is defined as "extending the hands and arms in *any* direction." SSR 85-15, 1985 SSR LEXIS 20 at *19, 1985 WL 56857 at *7 (emphasis added). Thus, even if Plaintiff were limited to frequent reaching due to the degenerative disc disease in his cervical spine as Drs. Sheehy and Wong opined, Plaintiff would be able to perform his past relevant work as a child monitor. Thus, the alleged error must be deemed harmless. *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (finding an error harmless where it did not negate the validity of the ALJ's ultimate conclusion).

## B.     Disregarding the Opinion of Dr. Scott

Plaintiff asserts the ALJ erred by not addressing the opinion of Dr. Scott, who reviewed the record in April 2011 and agreed with the agency's initial determination that Plaintiff was able to perform work at the light exertional level. (Doc. 20 at 12-13; Doc. 11-4 at 6) Plaintiff contends the ALJ was not permitted to ignore this opinion, and argues it "should be given full credit." (Doc. 20 at 12-13, citing 20 C.F.R. §§ 404.1527(f)(2), 416.927(f)(2) (stating that ALJs "must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence . . ."))

On the other hand, Defendant argues the ALJ was not required to discuss Dr. Scott's opinion because it was "neither significant nor probative" evidence. (Doc. 24 at 10, emphasis omitted) As Defendant notes, the Ninth Circuit has determined that "in interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence." *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (internal quotations omitted). Rather, the ALJ must explain only "why significant probative evidence has been rejected." *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984); *see also Flores v. Shalala,* 49 F.3d 562, 570-71 (9th Cir. 1995) (the ALJ "may not reject significant probative evidence without explanation").

9

Notably, Dr. Scott offered an opinion based upon a review of very few medical records shortly after Plaintiff filed his applications for benefits, and Dr. Scott did not offer any clinical findings to support the conclusion that Plaintiff was limited to light work. The Ninth Circuit has determined the opinion of a physician may be rejected when it is "conclusory and brief" and lacks support of clinical findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986) (a physician's opinion may be rejected "if brief and conclusory in form with little in the way of clinical findings to support [its] conclusion"); *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (finding "[t]he ALJ permissibly rejected... reports that did not contain any explanation of the bases of their conclusion"). Moreover, only a day after Dr. Scott offered the conclusion that Plaintiff could perform light work, the Social Security Agency determined the medical record was insufficient and "there were not enough records available pertaining to [Plaintiff's] physical condition." (Doc. 11-4 at 6) Given the lack of probative value, the ALJ did not err in disregarding the opinion of Dr. Scott.

C.   **Environmental Limitations**

Plaintiff notes Drs. Sheehy and Wong opined he should "avoid concentrated exposure to extreme cold, vibrations, and hazards." (Doc. 20 at 9-10) On the other hand, Dr. Vesali determined Plaintiff did not have any environmental limitations (Doc. 11-8 at 81), and the ALJ adopted this opinion (*see* Doc. 11-3 at 22).

Significantly, whether Plaintiff should avoid concentrated exposure to extreme cold, vibrations, and hazards, he would be able to perform the work of a child monitor. The *Dictionary of Occupational Titles* explains that a child monitor position does not require any exposure to extreme cold; vibrations; or hazards such as moving parts, electric shock, radiation, explosives. *DOT* 301.677-010, 1991 WL 672562 (explaining each of these activities or conditions are "[n]ot present" and "do[] not exist" with the child monitor position). Consequently, even if the ALJ erred in failing to address the environmental limitations, Plaintiff fails to show that this was not harmless error. *See Batson*, 359 F.3d at 1197. Moreover, the ALJ's determination that Plaintiff did not have environmental limitations is supported by substantial evidence in the record given the opinion of Dr. Vesali, who did not identify any environmental limitations following the examination and review of Plaintiff's medical records.

*See Tonapetyan*, 242 F.3d at 1149.

## VI.     Conclusion and Order

For the reasons set forth above, the Court finds Plaintiff fails to identify any harmful error in the ALJ's analysis. Rather, substantial evidence in the record supports the ALJ's determination that Plaintiff is able to perform his past relevant work as a child monitor. Thus the conclusion that Plaintiff is not disabled must be upheld by the Court. *See Sanchez*, 812 F.2d at 510.

Accordingly, **IT IS HEREBY ORDERED**:

1. The decision of the Commissioner of Social Security is **AFFIRMED**; and
2. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, and against Plaintiff Robert Zamora.

IT IS SO ORDERED.

Dated:   **August 3, 2015**                             **/s/ Jennifer L. Thurston**
                                                                      UNITED STATES MAGISTRATE JUDGE